SORENSON v. WEGERT.

AUTOMOBILES—GUEST PASSENGERS—GROSS NEGLIGENCE—WILFUL AND WANTON MISCONDUCT—INSTRUCTIONS.

In guest passenger's action for injuries sustained as the result of defendant host's alleged gross negligence or wilful and wanton misconduct, verdict and judgment for plaintiff in the sum of $3,500 is affirmed where charge to jury, taken as a whole, probably left with the jury a correct impression as to what is necessary to establish wilful and wanton misconduct, notwithstanding portion of charge permitted recovery by plaintiff if defendant was driving at a high rate of speed, was unable to bring the car to a stop within the assured clear distance ahead, or drove upon the wrong side of the road (1 Comp. Laws 1929, § 4648).

Appeal from Manistee; Neal (Max E.), J. Submitted April 14, 1942. (Docket No. 57, Calendar No. 41,954.) Decided May 18, 1942.

Case by Anna Sorenson against Emma Wegert for personal injuries suffered while riding in defendant's automobile. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Frederick P. Clohset* and *Campbell & Campbell,* for plaintiff.

*Alexis J. Rogoski,* for defendant.

CHANDLER, C. J. (*concurring*). This action is brought by plaintiff against defendant for damages for personal injuries sustained while a guest passenger of defendant. The case was tried before a jury and resulted in a verdict in favor of plaintiff for the sum of $3,500.

Upon the conclusion of plaintiff's proof, and again after the proof of both parties had been submitted, defendant moved for a directed verdict on the ground that the proof failed to show that the conduct of defendant in the operation of her car before and at the time of the accident, which resulted in plaintiff's injuries, constituted gross negligence or wilful and wanton misconduct within the meaning of the guest passenger act as construed by this court. See 1 Comp. Laws 1929, § 4648 (Stat. Ann. § 9.1446).

Decision on these motions was reserved by the trial court under the Empson act (3 Comp. Laws 1929, § 14531 [Stat. Ann. § 27.1461]) and the case was submitted to the jury.

After the return of the verdict, defendant moved for entry of judgment *non obstante veredicto* which was denied by the trial court, and judgment for plaintiff was entered on the verdict.

Defendant moved for a new trial for alleged errors in the trial and proceedings, which will be later dis-

cussed, which motion was also denied by the court, and this appeal followed.

Certain facts are undisputed, *viz:* that plaintiff was a guest passenger in an automobile owned and driven by defendant; and that in the course of the trip the automobile collided on the highway with another car driven by one Gladys Ohman Risch-kewicz and plaintiff was injured. As to the alleged acts of gross negligence or wilful and wanton misconduct of defendant at the time of and immediately preceding the accident the testimony is conflicting.

The parties litigant are cousins and both are residents of the city of Manistee. On Sunday, September 15, 1940, defendant invited plaintiff, her husband and her mother to accompany defendant and her husband on an automobile trip to the city of Ludington, and at about 3 o'clock in the afternoon the group left Manistee and proceeded to Ludington. From there, they went to Hamlin Lake, a resort north of Ludington on the shore of Lake Michigan. While there each of the party, except the mother, had two servings of beer and she, plaintiff's mother, had one glass of wine. On their return from the resort, they stopped at a tavern in the west end of Ludington where plaintiff, defendant, and her husband each had one serving of beer. Mr. Sorenson did not go into the tavern. When they left the tavern, they went toward Scottville which would take them through the main street of Ludington, past the Stearns Hotel. Defendant and plaintiff were on the front seat and the others were in the rear. Up to this point, all parties are in agreement that none of the party showed any evidence of intoxication at the time they left the tavern. It is the subsequent conduct of the defendant of which complaint is made.

The conduct of defendant which plaintiff claims constituted gross negligence or wilful and wanton

misconduct is alleged in her declaration to be the following:

## IV.

"That after plaintiff became a passenger in said automobile in the city of Ludington, for the return trip to Manistee, defendant repeatedly turned in her seat to argue with her husband, who was on the rear seat of the car, and began to drive and operate said automobile in a careless, reckless, negligent, and unlawful manner and in wilful and wanton disregard of the traffic upon the streets of Ludington, and wholly ignored the stop signs and traffic signals in said city and when defendant was requested to drive cautiously and keep a lookout ahead where she was driving the car and respect the rules and regulations governing the operation of automobiles upon public streets and highways and drive it on its proper side of the highway in the direction in which it was traveling, defendant became angry with plaintiff and others in her automobile and swore at them and said that if her automobile was wrecked she would wreck it.

## V.

"That as soon as plaintiff discovered the mental attitude and careless manner of defendant while operating said car over the public streets and highways and her failure to keep a lookout in the direction in which she was driving said car, and the rapid speed with which she was driving it, and her failure to drive it at all times on its proper side of the highway in the direction it was being driven, plaintiff demanded that the automobile be stopped so that she and her husband and her mother could get out of the car, and find some other way of getting home.

## VI.

"That defendant refused to stop the automobile or let plaintiff and her husband and mother alight from the car, and proceeded in an easterly direction

from Ludington, Michigan, over US highway No. 10 and when about 6 miles east of said city of Ludington, while driving said automobile in a careless and reckless manner from one side of the road to the other, and while defendant's husband and plaintiff were protesting to defendant about the manner and improper way which she was driving said automobile, whereupon defendant while in a violent quarrel with her husband, and without keeping a lookout in the direction in which she was driving said car, and with her head turned to the side and back, carelessly, negligently and wantonly directed said automobile, while it was being driven at a high and dangerous rate of speed, to-wit, 50 miles per hour, across the highway into the lane of traffic of oncoming automobiles from the opposite direction and cut off the course of traffic of an automobile driven in a westerly direction by one Gladys Ohman, and did then and there run into and against said automobile with such force and violence that plaintiff, who was sitting in the front seat of the automobile with defendant, was thrown against the inside front of said automobile whereby her head broke the windshield and her right arm and side struck the cowl or inside front of said automobile with such force that her right arm was seriously and permanently injured and damaged, and her right side was seriously and permanently injured and damaged;

"That plaintiff's back and spine, as well as her neck and head were seriously and permanently injured thereby."

The testimony on behalf of plaintiff in support of the foregoing allegations was that defendant almost immediately after leaving the tavern commenced driving her automobile in the business section of the city of Ludington at a rate of speed in excess of 50 miles per hour in disregard of stop signals and of approaching traffic, and that as she continued she increased the speed of her car to 55 miles per hour

and better, zigzagging and swerving in and out of the road and the oncoming traffic like a snake trail and almost sideswiping cars proceeding in the opposite direction.

Plaintiff testified that while in the business section she asked defendant not to drive so fast "or we will all get pinched or killed," and that defendant angrily replied, "shut up, I'm driving this car;" that later as defendant increased her speed and barely missed sideswiping a car, and increasing danger became more apparent to her, she asked defendant to be careful, to stop the car and let Lawrence (plaintiff's husband) drive, to which request defendant angrily responded, "that (words not found in the books) won't drive my car;" that during this drive through Ludington and beyond, cars coming from the opposite direction were lined up as far as one could see; that as defendant was swerving in and out of her line of travel defendant's husband said to her, "Stop that car. Let us out. G— D— it, we will all get killed," to which defendant, in an angry tone responded, "Shut up you (words still not found in the books);" that defendant also told her husband that she was driving the car and if it was to be smashed she would smash it, and that in about a minute thereafter the car was smashed and plaintiff was injured; that at the time of the collision defendant had partially turned around and was arguing with her husband, telling him "to shut up," and that when she turned she swung the car around and collided with the oncoming car.

The record discloses that the right front fender of the Wegert car was struck first from which an inference might be drawn that defendant turned her car rather sharply into the path of the oncoming vehicle.

Plaintiff testified that she first noted that something was wrong with defendant when she was ignoring traffic regulations and commenced zigzagging back and forth on the streets of Ludington, and concluded that defendant was not sober. Mr. Sorenson testified that he first noticed that defendant was intoxicated just east of Ludington because she was not keeping to her side of the road and was off the road half of the time.

On the day in question, the roads were dry and the weather clear. The accident happened sometime between 6:30 and 7 o'clock in the evening and all cars on the highway had lights on.

The testimony of defendant was a denial of all acts of negligence or misconduct charged by plaintiff. She denied that she was intoxicated or that she was angry; denied having any quarrel with her husband and the use of the language accredited to her by plaintiff and Mr. Sorenson; and denied that anyone in the car complained of her driving or asked her to stop the car. In this she was corroborated by the testimony of her husband. So it may be said that the testimony as to what transpired between the time of leaving the tavern and the collision is highly contradictory.

The testimony of plaintiff and her husband as to the manner in which the Wegert car was being driven previous to and at the time of the accident was in part corroborated by the testimony of Mrs. Rischkewicz, the driver of the other car involved in the collision, and her mother Mrs. Ohman. Mrs. Rischkewicz testified:

"On the night of September 15th last I was driving a 1938 Dodge Sedan automobile on US highway 10 towards Ludington. My mother, my brother and girl friend were with me. It is a cement highway.

On that evening my automobile came into a collision
with an automobile. I was driving west, on the right
side of the pavement. I was driving the car and
the lights were on. I saw a car coming in my direc-
tion from the west. My car came into a collision
with an automobile on that pavement that evening.
As we were going west towards Ludington the other
car came toward us and I pulled to the left to avoid
hitting it. It sideswiped our car. I didn't see Mrs.
Wegert. I got out of my car. It was a clear night.
There was no fog."

Mrs. Ohman testified:

"On the night of September 15th I was in an auto-
mobile driven by my daughter. It was a nice eve-
ning and there was no fog. I saw the car that came
into a collision with the car in which I was riding as
it approached. Our car was on the right side. We
saw that the lights of the car were bright, coming
like that (indicating). Gladys says 'Mama, they are
going to hit us.' That's the last I knew. I was
knocked out. * * * The road is sufficiently wide that
two cars can meet real good. Big trucks go on it.
There is a black mark down the center."

On cross-examination she said:

"*Mr. Rogoski:* When you first saw the car was
it on its side or your side?
"*A.* I can't say whether it was on its side or our
side. The lights were bright and it was coming to-
ward us.
"*Q.* Right along?
"*A.* Sometime on one side and sometime on the
other side.
"*Q.* Where was it when you first saw it?
"*A.* Looked like it was heading right straight for
us—like it did.
"*Q.* Your answer is: When you first saw it it ap-
peared to be on the wrong side of the highway, is
that your answer?

"*A.* Yes.

"*Q.* It came right toward you?

"*A.* It hit us, it must have.

"*Q.* What I am trying to get you to do is to tell what you saw.

"*A.* I saw it come toward us, the lights were turned on and the lights were on one side then on the other.

"*Q.* Where was it?

"*A.* On our side headed right toward us.

"*Q.* Was it headed back?

"*A.* It was on this side part of the time and part of the time on their side.

"*Q.* How far did it go before it turned back on its own side?

"*A.* A car comes so fast you couldn't tell how fast that happened.

"*Q.* Did you see it?

"*A.* I saw it on one side then on the other.

"*Q.* When you first saw it was it on your side?

"*A.* It was just coming like that—just a snake trail down the road."

It was on this conflicting testimony that the case was submitted to the jury to determine whether the conduct of the defendant amounted to gross negligence or wilful and wanton misconduct under the rules laid down by the trial court to govern them in their deliberations. The verdict of the jury conclusively establishes that they believed the testimony of plaintiff and her witnesses, thus bringing to us for consideration the legal question: Was the evidence sufficient to present to the jury the question of gross negligence or wilful and wanton misconduct on the part of defendant?

On many occasions this court has been required to decide as to where negligence ends and wilful and wanton misconduct begins, and we must concede that no hard and fast rule can be stated that will control

the established facts of every case. Therefore, we are no nearer the solution of this problem than we were when we decided the case of *Goss* v. *Overton*, 266 Mich. 62, wherein we said:

"There is no exact standard or measurement by which we may determine where negligence ends and wilful or wanton misconduct begins, and each case must be decided on its own facts."

In *Willett* v. *Smith*, 260 Mich. 101, we said that the elements necessary to characterize an injury as being wantonly or wilfully inflicted were:

"According to a note, 69 L. R. A. 516, and text, 20 R. C. L. p. 145, quoted and approved a number of times by this court, the elements necessary to characterize the injury in the case at bar as wantonly or wilfully inflicted are:

" '(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.' "

See, also, *Johnson* v. *Fremont Canning Co.*, 270 Mich. 524; *Sherman* v. *Yarger*, 272 Mich. 644; *Fink* v. *Dasier*, 273 Mich. 416; *Bonnici* v. *Kindsvater*, 275 Mich. 304.

That the trial court had the foregoing rule in mind when he instructed the jury is evidenced by his charge to the jury on this branch of the case which was as follows:

"Ordinary negligence consists in doing or omitting to do that which an ordinarily careful and prudent person would not have done or would not have omitted to do under like or similar circum-

stances. I again say to you there can be no recovery in this case for this kind of negligence here defined, for just ordinary negligence.

"Proximate cause means that failure to act which as a natural result or sequence brings about the injuries complained of.

"In respect to the meaning of gross negligence or wilful and wanton misconduct I charge you that the law of this State does not recognize any degree of negligence and therefore gross negligence, as used here, does not mean something of less degree than wilful and wanton misconduct. With this in mind I can make the meaning of wilful and wanton misconduct more clear to you by instructing you that it must appear in this case that the defendant had (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

"I further charge you under the law of this State it is the duty of any person driving a motor vehicle on a highway to drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and of any other conditions then existing, such as in this case the dusk of twilight at about 7 p. m. on the evening in question, and further, no person shall drive any vehicle upon the highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead.

"It is also the duty of a driver of a motor vehicle to drive upon the right of the center of the highway, that is, upon his own side of the road, and if he drives upon the wrong side of the road he assumes the risk in doing so and is held to a greater degree of care.

"Now therefore, if you find by a preponderance of the evidence in this case, that the defendant at the time and place in question here, was guilty of wilful and wanton misconduct in the operation of her car, as these terms have been above defined, that is, if she were driving her car at a high and unreasonable rate of speed without due regard to the known and apparent conditions surrounding her, that she was unable to bring her car to a stop within the assured clear distance ahead; that she was driving upon the wrong side of the road and that she was doing any one or more of these things in a reckless manner and in utter disregard of the obvious and apparent dangers about her and of the probable consequences to the occupants of her car, and that she had the ability to avoid the doing of such things by the exercise of ordinary care in the use of the means at hand and she omitted to do so, then, and in that event, the defendant would be guilty of wilful and wanton misconduct and the plaintiff would be entitled to your verdict provided you further find by the same preponderance of the evidence that such wilful and wanton misconduct was the proximate cause of the accident and the injuries complained of; otherwise, if you fail to so find your verdict will be for the defendant—no cause of action."

On the question of the application of the rule, the court instructed:

"I charge you that excessive speed, or driving upon the wrong side of the pavement in the face of approaching traffic, or failure to have one's car under control so as to bring it to a stop within the assured clear distance ahead, do not, standing alone, or in themselves constitute gross negligence or wilful and wanton misconduct, within the meaning of the guest passenger act.

"I also charge you that evidence that the defendant disregarded protests of the plaintiff or of other passengers in her automobile as to the manner in

which she was operating her car, or that the plaintiff and others requested her to stop to let them out or allow some one else to drive, are not evidence of wilful and wanton misconduct standing alone and by themselves. One is not required to operate a car upon instructions given from the back seat. The fact, if you find it to be a fact, that the defendant drove in a zigzag manner after leaving Ludington up to the time of the accident, standing alone or by itself is not evidence of wilful and wanton misconduct and neither is the declaration, if made by her, that she would smash the car if it was to be smashed, alone, evidence of such misconduct. But you have a right however, to take all these things into consideration, insofar as you find them established by the proofs, together with the speed of the car, the zigzagging, the protest, and the other matters of a similar nature which I have mentioned above, together with all the other evidence in the case in determining whether or not the defendant's conduct at the time and place claimed, amounted to gross negligence or wilful and wanton misconduct as defined by me in the early part of this charge. If you are satisfied by the weight of the proofs that it does, then the plaintiff may recover, otherwise your verdict will be for the defendant.

"The claim is made here that the defendant while driving the car at the time and place claimed was under the influence of intoxicating liquors. I say to you, however, she is not on trial upon a charge of operating a car while under the influence of intoxicating liquors. That is an entirely different charge than the issue here presented and you will give it no consideration. The intoxication of the defendant, if you should find it to be a fact, is not in itself evidence of gross negligence or wilful and wanton misconduct, but it is a circumstance together with the other circumstances in the case, which you may consider for such bearing as it may have upon her manner of driving her car prior to and at the time of the ac-

cident and in determining the defendant's attitude of mind in relation to the question as to whether or not her misconduct was wilful and wanton. * * *

"I say to you in connection with this claim of intoxication that if plaintiff knew that defendant was intoxicated when plaintiff became a passenger in defendant's automobile for the return trip to Manistee, or if such condition was apparent to plaintiff or should have been apparent in the exercise of reasonable care, she assumed all risk incident to riding in the automobile under such circumstances.

"There is no evidence in this case that the defendant ran through a traffic light set against her in passing through Ludington upon their return home and you will disregard this claim of misconduct entirely.

"Now the word 'wilful,' as used in this statute, means voluntary or intentional and the word 'wanton,' means reckless, foolhardy, in utter disregard of the consequences and it is this that must be first established.

"I say to you, however, that in order for you to find the defendant's misconduct intentional that you are not required to pry into the secrets of her mind in order to determine if she acted intentionally or not. The intent may be gathered from her conduct and the surrounding circumstances as disclosed by the proofs and from them you may determine whether or not the misconduct charged was intentional and reckless, so as to be wilful and wanton as used in the statute.

"In other words, Gentlemen, before the plaintiff may be entitled to your verdict the evidence must rise to that weight and dignity as to satisfy you that the defendant's conduct has been wilful and wanton in the respects charged by the plaintiff and that the injuries sustained were the proximate results therefrom and if you are so satisfied your verdict will be for her, otherwise, your verdict will be for the defendant."

After a careful review of the record, it is clearly apparent to us that the conduct of the defendant presented a question for determination by the jury as to whether or not her driving under the surrounding circumstances was in disregard of easily apprehended consequences amounting to wilful and wanton misconduct. The evidence indicated on the part of the defendant an affirmatively reckless state of mind with intent to depart from careful driving. The traffic approaching defendant was clearly indicative of serious consequences if she failed to drive on her own side of the road. This is not a case where a single act of negligent conduct on the part of defendant was presented. It involved continuous negligent acts on her part brought definitely to her notice by the near sideswiping of two or three cars, by a long line of approaching traffic moving "thick and fast," as expressed by Mrs. Ohman, by the protests of plaintiff and defendant's husband, with the demand that she stop the car and let them out, by defendant's anger, and by the deliberate turning of her head to the rear of the car to upbraid her husband while traveling in excess of 55 miles per hour, which acts, taken together, justified and required submission of the case to the jury to determine whether defendant was guilty of gross negligence or wilful and wanton misconduct. The jury found defendant guilty of such misconduct and that the same was the proximate cause of plaintiff's injuries.

We find no error on the part of the trial court in denying the various motions made by defendant.

Our conclusion that the facts presented a jury question finds ample support in previous decisions where somewhat analogous sets of circumstances are to be found. See *Boswell* v. *Docsa,* 285 Mich. 559; *Thomas* v. *Parsons,* 278 Mich. 276; *Rattner* v. *Lieber,* 294 Mich. 447.

Appellant also contends that the court erred in denying her motion for a new trial because the verdict was against the great and overwhelming weight of the evidence, and because such verdict was contrary to the law and instructions of the court. We find that this assignment of error merits no further discussion.

Defendant in her statement of questions involved contends that a new trial should be granted because of improper and prejudicial rulings of the trial court on evidence and because the verdict was influenced by improper conduct of plaintiff's counsel.

The record discloses but two rulings of the court adverse to defendant on the admission of evidence. Plaintiff's counsel asked plaintiff the following questions and received the answers as here indicated:

"*Q.* I show you a paper and ask whose handwriting that is in?

"*A.* Mrs. Wegert's.

"*Q.* Where did you get it?

"*A.* She came to my house and brought that to me.

"*Q.* What did she say about this paper?

"*A.* She was sued for $25,000—I should memorize that and say that.

"*Mr. Rogoski:* I move that is improper and prejudicial and has no bearing on this case at all.

"*The Court:* It is competent as affecting the credibility of the witness. If Mrs. Wegert takes the stand it may be competent as an admission on her part. I haven't seen the paper. It has not been offered yet.

"*Q.* Was this paper left at your home?

"*A.* Yes, sir.

"*Q.* Was it read to you?

"*A.* Yes, sir.

"*Q.* Did she tell you who wrote it?

"*A.* She wrote it.

"*Mr. Campbell:* I offer this paper in evidence.

"*Mr. Rogoski:* I object to it as being incompetent, irrelevant and immaterial and having no place in this lawsuit.

"*The Court:* The objection is overruled."

The paper referred to was exhibit 1 and is as follows:

"Two glasses of beer at Hamlin, Mother one wine; stopped no other saloon. If they say we did why that was the Sunday before, September 8th; passed through a streak of fog; string of cars coming; looked as if she was trying to pass car going very slow."

We think this evidence was admissible for the reason stated by the trial court and also for the purpose of showing the state of mind of defendant as to how she viewed in retrospect all conditions and circumstances present at the time of and immediately preceding the accident. We find no error in the admission of exhibit 1.

The other instance of an adverse ruling is the following. The attorney for plaintiff, on redirect examination of witness Lawrence Sorenson, conducted the following examination.

"*Q.* I neglected to ask this question a while ago: After this collision when your wife was hurt did you know of Mrs. Wegert being arrested?

"*Mr. Rogoski:* That is incompetent, improper, and prejudicial.

"*The Court:* I will receive it for the time being.

"*Mr. Campbell:* She pleaded guilty and sat in jail 10 days?

"*A.* Yes, sir.

"*Mr. Rogoski:* I object to that.

"*The Court:* The question is objectionable especially in its form.

"*Mr. Rogoski:* I move the jury be instructed to pay no attention to it.

"*The Court:* Gentlemen of the jury—you must pay no attention to the 'jail sentence.' It has no bearing in this case.

"*Mr. Campbell:* Did you talk to Mrs. Wegert again?

"*A.* Not until she came out of jail.

"*Mr. Rogoski:* I move the answer be stricken.

"*The Court:* It is proper for fixing the time of the conversation, if one took place.

"*Mr. Campbell:* Where did that conversation take place?

"*A.* I believe it was at my home the next day after she came out. My wife was with me."

We find no error in the above ruling of the court. Even if the jury, by reason of the foregoing examination and ruling of the court, received some impression unfavorable to defendant, it was remedied by the court in the following charge:

"Proof has been received concerning the defendant's plea of guilty to a drunken driving charge at Ludington, growing out of the same accident. This evidence was received for such bearing, if any, as you may see fit to give it upon the credibility of the defendant as a witness. It may not be used or considered by you for any other purpose. It is not proof that the defendant was intoxicated at the time of the accident on September 15th and you may not use it for that purpose. You are not concerned with the penalty imposed upon that conviction and as I have heretofore instructed you during the trial you will disregard all reference to that question and not permit it to influence you to the slightest degree."

We have searched the record carefully in connection with the assignment of error claiming prejudicial conduct on the part of plaintiff's attorney. We find nothing therein that tends to show misconduct. The case was ably and vigorously tried by counsel on both sides and our research discloses

nothing of an inflammatory or prejudicial nature in the conduct or statements of either counsel.

Appellant contends she should be granted a new trial because the verdict is excessive and exorbitant and is manifestly the result of sympathy, partiality, prejudice and passion.

This question was raised before the trial court on defendant's motion for a new trial. In denying said motion, the court said:

"It is urged that the verdict of $3,500 is excessive. The accident occurred September 15, 1940, and the trial took place on March 27, 1941. The testimony shows that the plaintiff was in normal health prior to the accident. Since the accident she testified she has been subject to pain, which if not constant, has been present with more or less severity during the entire period, but was diminishing at the time of the trial. She sustained several physical injuries, including two or more broken ribs, bruises about her body, loss of two teeth and a limitation in the movement of her right arm as well as a swollen hand. She was confined to her bed a matter of two weeks and to the house a considerable time thereafter. The arm had improved at the time of the trial, but her ability to use the hand had been diminished. She testified she still suffered pain and sleepless nights.

"An examination of the plaintiff's testimony in respect to her physical condition and suffering together with a recital of her condition as given by Dr. Konopa, considered as a whole, satisfies the court that as a matter of law it cannot be said that the verdict was excessive or shocked the conscience of the court. Unless it may be so said the court may not substitute its judgment for theirs."

The court in his charge to the jury in express terms limited the award to be made, if they found for plaintiff, to damages for pain and suffering only, and clearly cautioned them that they could not per-

mit sympathy or prejudice to influence them in their deliberations as to the amount of the verdict, but that it must be based solely upon the evidence.

We are not able to say that the verdict was excessive. It certainly was not such as to shock the conscience of the court. If there was any doubt in our minds on this question, we should give some consideration to the views of the trial court, who had the advantage of seeing the plaintiff and noting her apparent condition, as well as seeing and hearing the witnesses who gave testimony in relation to her physical condition before and after the accident and who had means of observing her during her confinement as a result of said injuries and subsequent thereto.

The judgment is affirmed, with costs to plaintiff.

STARR and BUSHNELL, JJ., concurred in the result.

BOYLES, J. I concur in affirmance but cannot give tacit approval to all of the statements made in the charge to the jury. As a whole, it probably left with the jury a correct impression as to what is necessary to establish wilful and wanton misconduct. However, the trial court, in pointing out the difference between ordinary negligence and gross negligence, instructed the jury: "Now therefore, if you find by a preponderance of the evidence in this case, that the defendant at the time and place in question here, was guilty of wilful and wanton misconduct in the operation of her car, as these terms have been above defined, *that is,* if she were driving her car at a high and unreasonable rate of speed without due regard to the known and apparent conditions surrounding her, that she was unable to bring her car to a stop within the assured clear distance ahead; that she was driving upon the wrong side of the road and that she

was doing *any one or more* of these things in a reckless manner and in utter disregard of the obvious and apparent dangers about her and of the probable consequences to the occupants of her car," then plaintiff would be entitled to a verdict if that was the proximate cause of the accident. High rate of speed, inability to bring the car to a stop within the assured clear distance ahead, driving upon the wrong side of the road, do not constitute gross negligence. I concur in the result.

NORTH, WIEST, BUTZEL, and SHARPE, JJ., concurred with BOYLES, J.

NORTH, J. (*concurring*). I concur in affirmance; but if I had any reasonable doubt as to the merits of plaintiff's case or that a retrial would result in a verdict in her favor I would be for reversal because of the error in admitting the testimony referred to in the opinion of Chief Justice CHANDLER. At the time exhibit 1 was offered and received in evidence and also at the time plaintiff sought to show by one of her witnesses that defendant had been arrested for driving a motor vehicle while intoxicated on this occasion, Emma Wegert, the defendant, had not been a witness in the case. Each of these items of evidence was wholly immaterial at the time it was offered; and as the record then stood each was prejudicial. Such practice should not be tolerated; and if there were reasonable doubt as to its having affected the outcome of the case should result in reversal. While it would not under all circumstances nullify the prejudicial result, it may be noted in the instant case that Mrs. Wegert subsequently did testify and admitted her arrest and conviction; and possibly to some extent, under the circumstances of this case, that mollified the error committed. In

any event the record before us is convincing that a just result was reached and I can therefore concur in affirmance.  See 3 Comp. Laws 1929, § 15518 (Stat. Ann. § 27.2618).

Butzel, J., concurred with North, J.