PEYTON v. DELNAY.

1. APPEAL AND ERROR—DIRECTED VERDICT—JUDGMENT NON OBSTANTE
   VEREDICTO—EVIDENCE.

   The Supreme Court reviews disputed facts in the view most
   favorable to plaintiff on appeal from the trial court's denial of
   motions for a directed verdict and for judgment *non obstante
   veredicto.*

2. AUTOMOBILES—GUEST PASSENGERS—WILFUL AND WANTON MIS-
   CONDUCT—EVIDENCE.

   Testimony adduced in guest passenger's action against host
   driver and her father, owner of the car, for injuries sustained
   *held,* to warrant submission of the issue of the host's wilful
   and wanton misconduct to the jury, where it appears the car
   was driven shortly previous to the accident at speeds up to
   85 miles an hour by a girl who realized she should not be
   driving at such speeds and although she temporarily heeded
   repeated protests, shortly resumed higher speeds and finally
   failed to negotiate a 90-degree turn on a dirt road (CLS 1954,
   § 257.401).

3. SAME—OWNER'S STATUTORY LIABILITY TO GUEST PASSENGER.

   The statute pertaining to a car owner's liability for injuries
   sustained by a guest passenger while the car is being oper-
   ated with the owner's express or implied consent imposes li-
   ability upon the latter if the accident and injury have been
   caused by the gross negligence or wilful and wanton misconduct
   of the operator of the vehicle (CLS 1954, § 257.401).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 947.
[2] 5A Am Jur, Automobiles and Highway Traffic §§ 499, 532, 537.
[3, 5] 5A Am Jur, Automobiles and Highway Traffic § 511.
[4] 5A Am Jur, Automobiles and Highway Traffic § 531.
[6] 53 Am Jur, Trial §§ 458, 459.
[7] 5A Am Jur, Automobiles and Highway Traffic § 1091 *et seq.*
[8] 53 Am Jur, Trial § 1083.
[9] 53 Am Jur, Trial §§ 1065, 1068.

4. SAME—GROSS NEGLIGENCE.

Gross negligence, as the term is used in the automobile guest-passenger act, includes ordinary negligence combined with a wilful and wanton disregard for public safety (CLS 1954, § 257.401).

5. SAME—GUEST PASSENGERS—STATUTES—PUBLIC SAFETY.

The guest-passenger act, imposing liability upon an owner of an automobile for injuries to a guest passenger sustained as the result of the wilful and wanton misconduct of the operator who drove the car with the owner's consent, is not a derivative of the *respondeat superior* doctrine but is a measure adopted by the legislature to promote public safety by holding the owners accountable for certain negligence of the operators (CLS 1954, § 257.401).

6. TRIAL—REMARKS OF COUNSEL.

Sharp remarks which passed between counsel at trial of guest passenger's action against host motorist *held*, under the record presented, not to have been so prejudicial as to preclude a fair trial having been had.

7. SAME—INSTRUCTIONS—THEORY OF CASE.

Trial court's instructions to jury in guest passenger's action against host motorist *held*, to have set forth the theories of the parties and to have instructed the jury on the law applicable thereto.

8. AUTOMOBILES—GUEST PASSENGERS—SPECIAL QUESTIONS—NEGLIGENCE—WILFUL AND WANTON MISCONDUCT.

Finding of jury in answer to special question that defendant host motorist was negligent in failing to make the turn where accident happened was not inconsistent with verdict for plaintiff, since such specific finding of negligence was but a part of the host's total conduct warranting the jury in finding her guilty of wilful and wanton misconduct (CLS 1954, § 257.401).

9. TRIAL—VERDICT—SPECIAL QUESTIONS.

It was not an abuse of discretion on the part of the trial court to send jury back to answer duly-submitted special questions after they had first reported without such answers (CL 1948, § 618.39; Court Rule No 37, § 6 [1945]).

Appeal from Jackson; Boardman (Harry D.), J. Submitted October 9, 1956. (Docket No. 71, Calendar No. 46,819.) Decided May 17, 1957. Rehearing denied July 31, 1957.

Case by Geraldine J. Peyton against George A. Delnay and Helen L. Delnay for injuries sustained while a guest passenger. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Dahlem & Dahlem,* for plaintiff.

*Kelly, Kelly & Kelly,* for defendants.

EDWARDS, J. This is a negligence action brought under the guest-passenger statute. Plaintiff below prevailed in a jury verdict and court judgment of $8,000, with defendants appealing.

The principal questions presented for our review are (1) whether or not the evidence supports a jury finding that defendant driver was guilty of gross negligence, and (2) if so, whether or not the owner of the car can be held liable for the driver's gross negligence under the owner liability act.

The setting for this case differs from most guest-passenger cases in that all parties were on the evening in question participants in a church activity.

The Ganson Street Baptist church, of Jackson, had a youth activity called the Youth Hour. Mr. and Mrs. George Delnay were adult sponsors thereof. The Youth Hour decided to stage a treasure hunt wherein clues would be planted at various locations in advance, and the young people, in automobiles, would seek to see which could first solve the clues and reach the treasure. As will appear, the young ladies of our current concern did not reach the treasure but did reach the hospital.

Plaintiff Geraldine Peyton and defendant Helen Delnay were close friends and members of the Youth Hour. Helen was given permission by her father, defendant George Delnay, to drive his car on the treasure hunt. Defendant Helen Delnay drove away from the church with plaintiff Geraldine Peyton in

the front seat beside her and 3 other girls in the back seat. After several stops to locate clues, the car ended up overturned 80 feet off a dirt road at a 90-degree turn which Helen had failed to negotiate. Plaintiff and one or more of the other girls were injured.

Concerning the above facts, there is no disagreement. About what happened between the departure from the church and the point of the accident, there is no agreement whatsoever.

Since we deal here with an appeal from the trial judge's denial of motions for a directed verdict and for judgment *non obstante veredicto,* we review the disputed facts from the view favorable to plaintiff which the jury apparently took of them. *Hulett* v. *Great Atlantic & Pacific Tea Co.,* 299 Mich 59; *Anderson* v. *Kearly,* 312 Mich 566; *Titus* v. *Lonergan,* 322 Mich 112; *Cramer* v. *Dye,* 328 Mich 370.

Samples of plaintiff's testimony tell her story of the ride from place to place up to the point of the accident:

"As I got into the car she says, 'Boy, am I ever mad.' She says, 'I first—I thought I was going to have to work tonight but I called up and told them I was ill,' she said, 'because I wanted to go out with a group of girls and take the car, but my folks told me I couldn't have the car unless I drove on the treasure hunt,' she said, 'so here I am, but I would certainly like to turn down a few signposts tonight.'
\* \* \*

"We were going past the house where her folks were at a Halloween party; that is the Henning residence. We went by so fast I just kind of glanced over and I didn't know which house, but as we passed the house, she said, 'My folks.' She said, 'I guess I better slow down. I am only doing 80 and my folks are there at a Halloween party, and I would hate to see my mother's face if I turned this crate over tonight;' and we did slow down. I would say,

about 10 miles an hour, about down to 70. We did slow down, and she was doing 80 because I noticed the speedometer. I looked after she made that remark. That's what called my attention to the fact that she was doing 80. That was about a mile and a half from Francis street. We were going kind of fast when we got to Francis street, but she did stop. We kind of slid out into the road. I remember that because I kind of looked to see if there was any oncoming traffic, but there wasn't. That is a dual highway there; 2 lanes. And I am speaking of running out into the westerly lane.  *   *   *

"I saw that yellow line on the right side of the center line of that curve up the hill. Going up, as we approached that curve, we started to pass a car that was in front of us, and as we got halfway up I happened to notice there was a yellow line there and I said, 'Helen, wasn't that a yellow line?' Nothing was said. We kept right on going. We didn't slow down.  *   *   *

"A little ways before we got to where I told her to stop for the sign, she had remarked that—she said, 'Girls, I am doing 85. I guess I better slow down.' Then she made the remark about she would hate to see her mother's face if she turned the crate over; the same remark she had previously made. Words to the same effect. She would hate to see—I think she said—her folks' faces. Something like that. She said, 'My father would have a fit.' I remember that.  *   *   *

"As she approached Cady road I looked at the speedometer. She was still doing about 50. Before we approached the jog at Cady road I remember Beatrice saying something, but, as to what she said, I don't remember. But I told Helen that there was a sharp jog down there and that she had better slow down, and she told me that she knew there was and that she was down at that many times before and knew all about it. I just said, 'Helen, you better slow down. There is a sharp jog ahead.' She made her response kind of flippy like. We slowed down to

some extent. She took her foot off the accelerator but she didn't brake. I remember we took the—when we got down there, we kind of just more or less swerved around. We kind of went to the left side of them and just turned again quite sharp. * * *

. . "I say the speed at which Helen Delnay was approaching the end of the pavement was 80 miles an hour. After I called her attention to the fact that a turn was ahead and before we were onto that dirt road, I had time to observe a car in front of us. He was on top of the hill at the time I looked up, and he was flashing his brake lights on and off, and we still hadn't approached the top of the hill yet because he was there. * * *

"I don't remember whether or not she applied her brakes. When the car hit the gravel, it zigzagged. I remember her doing nothing. I remember her—she had her hands on the steering wheel. She wasn't moving the steering wheel. She had her hands on it. It probably was moving but I don't think she was moving it. When we hit that dirt road, to me we were zigzagging around, and sliding from here to here. She looked kind of petrified. I believe she was frightened at that time."

Other of plaintiff's witnesses tended to corroborate most of the testimony quoted, while defendant and her witnesses tended to contradict it.

The trial judge's opinion summarized the testimony bearing on wanton and wilful negligence thus:

"The record is replete with testimony concerning claimed speeds attained by the car at various points on the trip ranging up to 85 miles per hour. There is testimony of numerous claimed protests to the driver by various occupants of the car. There is also testimony of claimed slowing down of the car by the driver following protests and of claimed resumption of higher speeds following. There is testimony of claimed jouncing about of passengers in the car, caused by the speed and claimed unusual movements of the car. There is testimony of

claimed angry, defiant, or petulant statements by the car driver during the trip. There is also testimony of claimed voluntary statements by the car driver indicative of awareness of driving conditions about her and of taking means to meet such conditions.

"The above brief outline of the range of proofs in the case clearly shows that, with possibly 2 exceptions, the incidents relied upon for recovery by the plaintiff are those commonly found in some combination in virtually every guest case appearing in Michigan Reports. The notable absent elements are drinking and profanity. Because of the background and training of these young, church-group girls, naturally neither latter element would normally appear."

The statute under which this action is brought provides, in part, as follows:

"Provided, however, That no person, transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought." CLS 1954, § 257.401 (Stat Ann 1952 Rev § 9.2101).

The jury in the instant case considered and answered 3 special questions as follows:

"*Question 1:* 'Did defendant Helen L. Delnay wilfully and wantonly drive into a place of danger?'
"*The answer:* 'Yes.'
"*Question 2:* 'Did defendant Helen L. Delnay wantonly and wilfully endanger the passengers in her car, including herself?'
"*The answer:* 'Yes.'

*"Question 3:* 'Was defendant Helen L. Delnay negligent in failing to make the turn where the accident happened?'

*"The answer:* 'Yes.' "

We believe that the testimony quoted and the facts recited by the trial judge warranted the submission of the issue of wilful and wanton misconduct to the jury. There was testimony from which the jury could have found that defendant driver had exhibited on the night in question "an affirmatively reckless state of mind with intent to depart from careful driving." *Sorenson* v. *Wegert,* 301 Mich 497, 511; *Greimel* v. *Fischer,* 305 Mich 45.

In a careful opinion dealing with the motion for judgment *non obstante veredicto,* the trial judge reviewed the cases interpreting the guest-passenger act and noted:

"With few exceptions, the granting of motions for directed verdicts in guest cases by trial courts was quite generally sustained up to *Cramer* v. *Dye,* 328 Mich 370, where the Court there reversed the trial judge's action in granting a directed verdict, holding that a jury question was presented. Then came the cases of *Price* v. *Western,* 330 Mich 680; *Cain* v. *Enyon,* 331 Mich 81; *Horton* v. *Fleser,* 340 Mich 68; and *Tuinstra* v. *Lynema,* 340 Mich 534. In the *Price* v. *Western Case,* the Court there significantly said:

" 'To the extent that previous decisions of the Court seem to hold to the contrary we now decline to follow the same.' "

In *Tuinstra* v. *Lynema, supra,* the trend toward re-emphasizing the necessity (where evidence warrants) of submitting the question of wilful and wanton misconduct to jury determination was further underlined (pp 542, 543):

"Under all the testimony in the case should Lynema have been held to have been, as a matter of law, not guilty of wilful and wanton misconduct, leaving no question in that regard for the jury? That, we think, would have run contrary to our holdings in *Kocks* v. *Collins*, 330 Mich 423; *Price* v. *Western*, 330 Mich 680; and *Cain* v. *Enyon*, 331 Mich 81. Defendant relies on earlier decisions. Not to be overlooked is the significance of the statement in *Price*, quoted with approval in *Cain* (p 90), that:

" 'To the extent that previous decisions of the Court seem to hold to the contrary we now decline to follow the same.'

"The holding in those 3 cases, reluctantly concurred in by the writer, undoubtedly represented a change from the view to which this Court earlier had adhered, and leads to the conclusion here that a jury question was presented. The verdict was not against the great weight of the evidence."

We believe that the instant case is similar to and governed by previous holdings of this Court in the *Titus, Cramer, Price, Horton,* and *Tuinstra Cases, supra.*

The other substantial question raised by appellants is phrased by them as follows:

"Is the owner of the car guilty of wilful and wanton misconduct because the car was driven with his consent?"

Appellants spell out their answer to this question thus:

"The provisions of the civil liability act do not impute the gross negligence or wilful and wanton misconduct of an operator of a motor vehicle to the owner thereof, so as to make the owner liable for injuries to a guest, where his only connection with the accident is in permitting the use of his car."

The statute which we must interpret to decide this issue provides for owner liability to a guest passenger under the following limitations:

"Nothing herein contained shall be construed to abridge the right of any person to prosecute a civil action for damages for injuries to either person or property resulting from a violation of any of the provisions of this act by the owner or operator of a motor vehicle, his agent or servant. The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the State or in the failure to observe such ordinary care in such operation as the rules of the common law requires. The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge. It shall be presumed that such motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of said injury by his or her father, mother, brother, sister, son, daughter, or other immediate member of the family: Provided, however, That no person, transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought." CLS 1954, § 257.401 (State Ann 1952 Rev § 9.2101).

The plain language of the statute establishes "negligent operation" with "express or implied consent or knowledge" of the owner as the first condition for recovery in the instant situation. As the

second, it requires that the accident (and injury) "shall have been caused by the gross negligence or wilful and wanton misconduct of the owner *or* operator of such motor vehicle" (emphasis supplied).

We believe that the language of the statute imposes liability on the owner where, as here, consent to and knowledge of the driving are conceded and the operator is found guilty of "wilful and wanton misconduct."

Appellants rely for a contrary view upon *Wieczorek* v. *Merskin,* 308 Mich 145; and *Geib* v. *Slater,* 320 Mich 316. Neither was a case involving suit by a guest passenger. Neither held that where the operator (driving with the owner's consent) was found guilty of gross negligence or wilful and wanton misconduct that this acted to relieve the owner of liability.

On the contrary, in *Wieczorek, supra,* Mr. Justice BUTZEL, at pp 148, 149, stated:

"Ordinary negligence does not signify the wantonness or wilfulness that are necessary elements of gross negligence, which, however, does include ordinary negligence combined with a wilful and wanton disregard for public safety. *Schlacter* v. *Harbin,* 273 Mich 465; *Finkler* v. *Zimmer,* 258 Mich 336; *Bobich* v. *Rogers,* 258 Mich 343; *Wyma* v. *Van Anrooy,* 260 Mich 295; *Grabowski* v. *Seyler,* 261 Mich 473; *Mater* v. *Becraft,* 261 Mich 477."

Appellants contend further that the owner here is not liable for wilful and wanton misconduct of the operator because at common law under the *respondeat superior* doctrine a wanton violation of the law was held to place a servant outside the scope of his master's service.

The statute we interpret here is not a derivative of the *respondeat superior* doctrine. It is a measure adopted by the legislature to promote public safety by holding automobile owners accountable for cer-

tain negligent acts of the persons to whom they entrust their automobiles. *Johnson* v. *Sergeant,* 168 Mich 444 (2 NCCA 334); *Stapleton* v. *Independent Brewing Co.,* 198 Mich 170 (LRA1918A, 916). It would be a strange construction of such a statute to hold an owner for the ordinary negligence of the person whom he allowed to drive his car and free him from liability if his chosen driver was found guilty of gross negligence or wilful and wanton misconduct.

A number of Michigan cases strongly imply the ruling above stated; and the issue has been passed on squarely in other jurisdictions with similar statutes. *Titus* v. *Lonergan, supra; Kocks* v. *Collins, supra; Koger* v. *Hollahan,* 144 Fla 779 (198 So 685, 131 ALR 886); *White* v. *Center,* 218 Iowa 1027 (254 NW 90).

Appellants' questions 1, 2 and 18 have been answered above.

We have reviewed the rulings of the trial judge, to which appellants' questions 3, 4, 5 and 6 pertain. Although there were some rather sharp remarks passed between opposing counsel, we find nothing prejudicial to the ultimate result of a fair trial in the record cited. The rulings on questions 4 and 5 we approve, and, though we consider that the question quoted in 6 should have been allowed on cross-examination, we do not consider that the judge's ruling prejudiced the result.

Appellants' questions 7 through 15 pertain to the judge's charge. We have reviewed it with care and believe that he fairly set forth the theories of the parties and instructed the jury on the law applicable thereto. No error appears. See *Gapske* v. *Hatch,* 347 Mich 648; *Schattilly* v. *Yonker,* 347 Mich 660.

The last of appellants' questions on appeal (16 and 17) pertain to the special questions. In question 16 appellants contend that the affirmative answer to

the 3d special question, "Was defendant Helen L. Delnay negligent in failing to make the turn where the accident happened," was inconsistent with the verdict for plaintiff and appellee. We do not agree. The negligence of the driver on this last turn found by the jury was a part of her total conduct which warranted the jury finding of wilful and wanton misconduct.

Nor do we believe that the trial judge abused his discretion (as appellants contend, in question 17) in sending the jury back to answer the special questions after they first reported without said answers. See CL 1948, § 618.39 (Stat Ann § 27.1019); Court Rule No 37, § 6 (1945); *Dailey* v. *Douglass*, 40 Mich 557.

The judgment of the court below is affirmed. Costs to appellee.

DETHMERS, C. J., and SHARPE, SMITH, KELLY, CARR, and BLACK, JJ., concurred.

VOELKER, J., took no part in the decision of this case.