TITUS v. LONERGAN.

1. AUTOMOBILES—GUEST PASSENGERS—GROSS NEGLIGENCE—WILFUL AND WANTON MISCONDUCT.

　　The owner of an automobile is not liable to a guest passenger for injuries sustained due to operation of the car unless the driver thereof is guilty of gross negligence or wilful and wanton misconduct (1 Comp. Laws 1929, § 4648).

2. APPEAL AND ERROR—DIRECTED VERDICT—JUDGMENT NON OBSTANTE VEREDICTO—EVIDENCE.

　　In passing on sufficiency of evidence in guest passenger's action against owner of car to support jury's finding that driver of the car was guilty of wilful and wanton misconduct con-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am. Jur., Automobiles, § 237.
[1] Gross negligence within statute limiting liability to guest. 74 A.L.R. 1198; 86 A.L.R. 1145; 96 A.L.R. 1479.
[2] 3 Am. Jur., Appeal and Error, § 886
[3-4] 5 Am. Jur., Automobiles, § 241.
[6] 5 Am. Jur., Automobiles, § 243.
[9] 5 Am. Jur., Automobiles, § 240.

stituting a proximate cause of the accident, where defendant had moved for directed verdict and for judgment *non obstante veredicto* the testimony must be construed in the light most favorable to the plaintiff (1 Comp. Laws 1929, § 4648).

3. AUTOMOBILES—GROSS NEGLIGENCE—WILFUL AND WANTON MIS-CONDUCT—EVIDENCE.

No general rule as to what constitutes gross negligence or wilful and wanton misconduct under guest act is applied as each case involving determination of issue as to sufficiency of evidence in such respect must be determined on the basis of the facts involved (1 Comp. Laws 1929, § 4648).

4. SAME—ELEMENTS NECESSARY TO CONSTITUTE WILFUL AND WANTON MISCONDUCT.

The elements necessary to constitute wilful and wanton misconduct under the guest passenger act are (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another (1 Comp. Laws 1929, § 4648).

5. SAME—WILFUL AND WANTON MISCONDCT—DISREGARD OF WARNINGS.

The mere fact that a guest passenger warned the host motorist and expostulated with him concerning the manner in which latter was operating the car and that such warnings and expostulations were disregarded, is not sufficient to establish wilful and wanton misconduct under the guest passenger act (1 Comp. Laws 1929, § 4648).

6. SAME—WILFUL AND WANTON MISCONDUCT—EXCESSIVE SPEED.

While excessive speed on the part of a host motorist is not, alone, sufficient to impose liability to his guest passenger under the guest act, it is an element to be considered, in connection with other circumstances, in determining whether the driver has been guilty of wilful and wanton misconduct in operation of an automobile (1 Comp. Laws 1929, § 4648).

7. SAME—STATE OF MIND OF HOST—FAILURE TO HEED WARNINGS.

The failure of a host motorist to heed reasonable expostulations and warnings of his guest passengers, especially when rejected with irritation and apparent resentment, may properly be considered as bearing on the state of mind of the host (1 Comp. Laws 1929, § 4648).

8. SAME—WILFUL AND WANTON MISCONDUCT—EVIDENCE—COURSE OF TRIP.

In determining whether or not a host motorist was guilty of wilful and wanton misconduct, the jury could properly consider his reckless state of mind and also his persistently reckless course of conduct during the trip from its commencement to the point of the accident (1 Comp. Laws 1929, § 4648).

9. SAME—INTOXICATED DRIVER—SPEED—WRONG SIDE OF ROAD—WILFUL AND WANTON MISCONDUCT—QUESTION FOR JURY.

Under evidence showing defendant's son was under the influence of intoxicating liquor when he drove car in which plaintiff was a passenger, that the latter repeatedly warned and expostulated at host for driving too fast and on wrong side of road but the driver not only disregarded warnings but resented them and subsequently collided with a 15-ton tractor-trailer combination some 12 feet off the pavement on the host's wrong side of the road, question of fact as to whether or not the driver was guilty of wilful and wanton misconduct was presented for determination of jury and evidence supported its verdict for plaintiff (1 Comp. Laws 1929, § 4648).

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted June 15, 1948. (Docket No. 82, Calendar No. 44,136.) Decided September 8, 1948.

Case by Theodore A. Titus, Jr., by his next friend, against Mary Lonergan for personal injuries sustained while a guest passenger in defendant's automobile. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*James J. Noon* and *Phillip C. Kelly,* for plaintiff.

*McAuliffe & Hatch,* for defendant.

CARR, J. Plaintiff herein brought suit in circuit court to .recover damages for injuries sustained by him in a traffic accident occurring on trunk line US 12 in the village of Parma January 2, 1946, between midnight and 1 o'clock. Defendant's automobile, in which plaintiff was riding as a guest passenger, was

being operated at the time by John Lonergan, the son of defendant, with her knowledge and consent. The record discloses that Chandler Ward and Paula J. Herrick were also passengers in the car, which collided with a truck driven by Robert Ray. As a result of the collision, Ward sustained injuries resulting in his death, and Miss Herrick and plaintiff were both injured.

Plaintiff joined John Lonergan and Robert Ray as parties defendant in the case, but subsequently discontinued as to the former. Following the opening statement of counsel on the trial, a motion to dismiss as to defendant Ray was granted. The question at issue on the trial was, therefore, whether defendant was liable under the provisions of the so-called Michigan guest passenger act (1 Comp. Laws 1929, § 4648 [Stat. Ann. § 9.1446]) on the ground that the driver of defendant's car was guilty of "gross negligence or wilful and wanton misconduct" within the meaning of the expression as used in the statute.

At the conclusion of plaintiff's case defendant moved for a directed verdict on the ground that the proofs submitted were not sufficient to permit recovery. The motion was taken under advisement, was renewed at the conclusion of the proofs, and decision thereon was reserved under the provisions of the Empson act.* The jury returned a verdict in favor of plaintiff, defendant's motion for judgment *non obstante veredicto,* subsequently made, was denied, and judgment was entered on the verdict. Defendant has appealed.

The question here raised is whether the evidence was sufficient to support the finding of the jury that the driver of defendant's car was guilty of wilful

---

* 3 Comp. Laws 1929, §§ 14531–14534, as amended by Act No. 44, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14531; Stat. Ann. and Stat. Ann. 1947 Cum. Supp. §§ 27.1461–27.1464).

and wanton misconduct constituting a proximate cause of the accident. In passing on this issue, the testimony must be construed in the light most favorable to the plaintiff. *McGrath* v. *Hargraves,* 310 Mich. 510; *Anderson* v. *Kearly,* 312 Mich. 566; *Alley* v. *Klotz,* 320 Mich. 521. Counsel in their briefs have called attention to many prior decisions of this Court arising under the guest act and involving questions as to the nature of conduct on the part of the driver of a motor vehicle that may be said to amount to "gross negligence or wilful and wanton misconduct." However, each case of this character must be determined on the basis of the facts involved. *Schlacter* v. *Harbin,* 273 Mich. 465; *Rowe* v. *Vander Kolk,* 278 Mich. 564.

It appears from the testimony in the case at bar that on the evening of January 1st preceding the accident, John Lonergan drove defendant's car from Albion to Jackson, taking Mr. Ward and Miss Herrick with him. Late in the evening they met plaintiff on a public street in Jackson and invited him to return to Albion with them. Before starting the return trip the parties visited a place known as the Roseland Inn where Lonergan drank liquor, the exact amount consumed by him being in dispute. Plaintiff and Miss Herrick were served with soft drinks. Plaintiff testified that, in returning from the Roseland Inn to the city of Jackson, Lonergan drove at a high rate of speed and persisted in crossing the center line of the highway, that he (plaintiff) protested, that Lonergan persisted in his conduct, and made replies to plaintiff indicating irritation and a determination to drive as he saw fit. Apparently plaintiff's recollection as to what occurred between Jackson and Parma was impaired or destroyed as a result of the injuries sustained by him in the collision. His testimony with reference to his expostulations and warnings addressed to Lonergan is, in

part, corroborated by the testimony of Miss Herrick. On one occasion, at least, the car swerved around a curve in such a manner and at such a rate of speed as to throw the witness against the side of the automobile.

The driver of the truck with which defendant's car collided, Robert Ray, testified as a witness on plaintiff's behalf. He stated in substance that he was operating a tractor and trailer loaded with steel, the aggregate weight being approximately 15 tons. He estimated the speed at which he approached the point where the collision occurred as 20 miles an hour, and testified that he saw the Lonergan car approaching, proceeding west in the eastbound lane of traffic, some distance ahead. We quote from Ray's testimony as follows:

"*Q.* You think when you saw him as you were coming down approaching Union street he was somewhere in the vicinity of Third street?

"*A.* Yes.

"*Q.* Whatever distance that may be?

"*A.* Yes.

"*Q.* Have you any estimate or judgment what that distance would be from Union street?

"*A.* Oh, I imagine between six and seven hundred feet.

"*Q.* Did you continue to observe him from that time until the collision took place?

"*A.* Yes.

"*Q.* State whether or not at any time he turned back on his own side of the highway?

"*A.* He never did.

"*Q.* As your cars came in nearer proximity to each other what, if anything, did you do?

"*A.* Well, as soon as I saw he was on my side of the road I started getting off on the berm, and I got completely off the highway, I would say 12 feet, right on the intersection of Union street I was. Instead of

making the curve he kept right on and ran into the front end of me.

"*Q*. You drove off what you call the berm or shoulder, off the traveled portion of US-12?

"*A*. That's right.

"*Q*. You got off some 12 feet off of US-12 in the intersection of Union street?

"*A*. That's right.

"*Q*. Where approximately, with reference to that location, did the impact occur?

"*A*. Well, about the center of Union street.

"*Q*. In about the center of Union street and approximately 12 feet off the paved portion of US-12, is that correct?

"*A*. That's right.

"*Q*. As you observed him coming down there and the distance narrowed between you, can you tell the court and jury what speed he was traveling, in your judgment?

"*A*. Well, I couldn't tell exactly. I would say he was in excess of 45 miles an hour. You can hardly tell, anyone meeting you, just how fast they're going, but he was coming right along.

"*Q*. You say he came down your part of the pavement, and off, and collided with your tractor and trailer in that location?

"*A*. Yes."

The witness further testified that he talked with John Lonergan at the scene of the accident after the impact took place and that the latter stated in substance that he knew the road very well, that he traveled it nearly every day, that he did not see the truck, and did not know why he ran into it. Ray further testified that his equipment had two headlights, and two marker lights on the cab, in front, that there were three lights on each side of the trailer, that all of these lights were on at the time, and that at the time of impact he was traveling at the rate of 6 or 7 miles per hour.

There is also testimony on behalf of plaintiff that while operating his car on the wrong side of the highway Lonergan was forced to swerve suddenly to avoid oncoming traffic. Summarizing the factual situation, the trial judge, in his opinion denying the motion for judgment notwithstanding the verdict, said:

"The evidence, viewed in the light most favorable to plaintiff, shows that John Lonergan was under the influence of intoxicating liquor, that he drove at a high rate of speed on the wrong side of the highway, and had to swerve to avoid on-coming traffic. That he continued said driving after being warned by plaintiff and he showed by his answers to the plaintiff that he did so intentionally and wilfully, and that the very dangers he was warned against finally caused the accident when he drove some 700 feet on the wrong side of the highway directly in the path of a fully lighted truck approaching from the east (west) and then continued off onto the shoulder on the wrong side of the highway, colliding with the truck some 15 feet off on the shoulder."

The elements necessary to constitute wilful and wanton misconduct were summarized by this Court in *Willett* v. *Smith,* 260 Mich. 101, quoting from 20 R.C.L. p. 145, as follows:

" '(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.' "

See, also, *McLone* v. *Bean,* 263 Mich. 113; *Fink* v. *Dasier,* 273 Mich. 416; *Bonnici* v. *Kindsvater,* 275 Mich. 304; *Riley* v. *Walters,* 277 Mich. 620. The above statement of the elements essential to wilful

and wanton misconduct, quoted with approval in the cases cited, suggests the test to be applied in the case at bar in determining whether the driver of defendant's automobile was guilty of such conduct as to impose liability in the instant case under the provisions of the guest passenger act. It is of course true that the mere fact that plaintiff warned Lonergan and expostulated with him concerning the manner in which he was operating the car and that such warnings and expostulations were disregarded, is not sufficient to establish wilfulness and wantonness. *Sherman* v. *David,* 293 Mich. 489; *LaDrig* v. *Renike,* 312 Mich. 277. Excessive speed, unless accompanied by wilful or wanton misconduct, is likewise insufficient to impose liability under the guest act. *Keilitz* v. *Elley,* 276 Mich. 701; *Bushie* v. *Johnson,* 296 Mich. 8. However, excessive speed is an element to be considered, in connection with other circumstances, in determining whether the driver of an automobile has been guilty of wilful and wanton misconduct in its operation. *Thomas* v. *Parsons,* 278 Mich. 276. Likewise a failure to heed reasonable expostulations and warnings, especially when rejected with irritation and apparent resentment, may properly be considered as bearing on the state of mind of the driver of the vehicle. In commenting on a somewhat similar situation, it was said in *Greimel* v. *Fischer,* 305 Mich. 45:

"His conduct, in view of the circumstances, exhibited a reckless state of mind and that he intended to disregard the apparent danger of which he had knowledge without regard to the consequences of the ensuing accident which must have been the only result obvious at the time. See *Sorenson* v. *Wegert,* 301 Mich. 497. A jury question was presented as to whether defendant was guilty of gross negligence or wilful and wanton misconduct and the trial court did not err in denying defendant's motions."

The facts in the case at bar are somewhat analogous to those presented in *Rogers* v. *Merritt,* 307 Mich. 459. There the plaintiff, a minor, was a guest passenger in an automobile driven by defendant's decedent. The testimony indicated that the driver operated the car at a high rate of speed, especially around a curve, that he drove on the wrong side of the highway, that he disregarded the protests of his passengers, and finally collided with a vehicle approaching from the opposite direction. In holding that plaintiff was entitled to judgment on the verdict returned by the jury it was said:

"In the present case defendant's decedent continuously drove his car in a reckless manner and at an excessive speed from the time he left Midland until the accident occurred. He barely avoided accidents when he rounded the S-curve on two wheels and when he crossed the narrow bridge over the Chippewa river at an excessive speed. In disregard of the warnings and protests of his guest passengers, he increased his speed and intentionally drove in the middle or on the left (wrong) side of M-30, a bumpy gravel road, at from 70 to 90 miles an hour. While so driving, with conscious indifference and reckless disregard of consequences, he collided head on with a car that was plainly visible, approaching on its proper side of the road at a reasonable speed.

"The persistent recklessness of the decedent driver and his statement that it was his car and he was 'going to drive it  *  *  *  the way he wanted to' clearly indicated, as we said in *Greimel* v. *Fischer,* 305 Mich. 45, 'a reckless state of mind and that he intended to disregard the apparent danger of which he had knowledge without regard to the consequences of the ensuing accident which must have been the only result obvious at the time.' Decedent's conduct and his continued reckless driving showed, as we said in *Sorenson* v. *Wegert,* 301 Mich. 497, 511, 'an affirmatively reckless state of mind with intent

to depart from careful driving.' He deliberately imperiled the safety and lives of plaintiff and his other guest passengers. His conduct involved more than a single act of negligence; it involved intentional, continued, and persistent acts of negligence and recklessness, the obvious and apparent result of which was the accident in question. In determining whether or not decedent was guilty of wilful and wanton misconduct, the jury could properly consider his reckless state of mind and also his persistently reckless course of conduct during the trip from Midland to the point of the accident.

"We are convinced that the testimony presented a question of fact for jury determination, as to whether or not defendant's decedent was guilty of gross negligence or wilful and wanton misconduct. The factual situations involved in the several cases cited by defendant distinguish them from the case at hand. We conclude that the trial court erred in granting defendant's motion for judgment *non obstante veredicto*."

See, also, *McLone* v. *Bean, supra; Schneider* v. *Draper,* 276 Mich. 259; *Wolfe* v. *Marks,* 277 Mich. 154; *Rattner* v. *Lieber,* 294 Mich. 447. Counsel for defendant cites and relies on prior decisions of this Court in each of which it was held, under the proofs submitted, that wilful and wanton misconduct had not been shown. In the case at bar, however, the testimony offered on behalf of plaintiff, which the jury had a right to believe and apparently did believe, was of such character as to sustain the right of recovery under the decisions above cited. The testimony of the witness Ray fully justifies the conclusion that the driver of defendant's car was operating it deliberately on the wrong side of the highway notwithstanding the approaching truck, that the situation was such as to indicate to the ordinary mind that a collision would occur if he continued in his course, and that in the face of such facts he drove

ahead off the left side of the pavement and into the truck. The conclusion can scarcely be avoided that Lonergan persisted in his conduct knowing that he was thereby subjecting his passengers, including plaintiff, to the danger of serious injury, and that he did so with a reckless disregard of consequences as affecting their safety. Obviously the accident might have been avoided had Lonergan directed the course of his car to the right lane of the pavement. Under the circumstances here involved, defendant was not entitled to a directed verdict, and there was no error on the part of the trial court in denying the motion for judgment notwithstanding the verdict. The proofs presented a question of fact for determination by the jury.

Judgment affirmed, with costs to plaintiff.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.