## KARNEY v. UPTON.

1. AUTOMOBILES—GUEST PASSENGERS—CONTRIBUTORY NEGLIGENCE—
   GROSS NEGLIGENCE—FINDINGS OF TRIAL COURT—EVIDENCE.

   Whether or not 13-year-old plaintiff guest passenger was guilty
   of contributory negligence in not leaving car owned by one
   defendant and driven by another defendant, when plaintiff
   ascertained that the driver insisted on driving although claimed
   to be intoxicated, and, if so, whether such fact would bar relief
   is not determined, where evidence presented as to 70-mile an
   hour speed and that car was driven from side to side of road
   before hitting steel bridge, and that some 20 requests were made
   to the driver in the course of a mile and a half to let other
   passenger operate the car being insufficient to disclose that
   finding of the trial judge in nonjury case that gross negligence
   or wilful and wanton misconduct of the driver had not been
   established was against the preponderance of the evidence
   (CLS 1956, § 257.401).

2. SAME—WILFUL AND WANTON MISCONDUCT—STATUTES.

   Wilful and wanton misconduct, as the term is used in the statute
   imposing liability for injuries to a guest passenger upon the
   owner of a car operated in a manner so characterized, requires
   that there be knowledge of a situation requiring the exercise
   of ordinary care and diligence to avert injury to another,
   ability to avoid the resulting harm by the exercise of such
   care in the use of the means at hand and the omission to
   use such care to avert the threatened danger, when to the
   ordinary mind it must be apparent that the result is likely
   to prove disastrous to another (CLS 1956, § 257.401).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error §§ 899, 900.
    5A Am Jur, Automobiles and Highway Traffic § 539.
[2] 5A Am Jur, Automobiles and Highway Traffic § 532.
    What constitutes gross negligence or the like, within statute
    limiting liability of owner or operator of automobile for injury
    to guest. 74 ALR 1198, 86 ALR 1145, 96 ALR 1479.
[3] 5A Am Jur, Automobiles and Highway Traffic §§ 533, 537.

3. SAME—WILFUL AND WANTON MISCONDUCT—EVIDENCE.

   Excessive speed, repeated protests, proceeding recklessly in the face of a traffic hazard that is, or should be apparent to the driver of a motor vehicle, are circumstances, individually inconclusive as to the driver's gross negligence or wilful and wanton misconduct but subject to consideration, along with other circumstances, by the trier of the facts in determining the state of mind of such a driver (CLS 1956, § 257.401).

4. SAME—GROSS NEGLIGENCE—WILFUL AND WANTON MISCONDUCT—NONJURY CASE—FINDING OF TRIAL JUDGE—EVIDENCE.

   Evidence presented in 13-year-old guest passenger's action against driver and owner of automobile which collided with the guard rail of a bridge at 11 p.m. while being driven by defendant driver, claimed to be intoxicated, and who is said to have driven at speeds of 70 miles an hour and from side to side of the road, *held,* not contrary to finding of trial judge, sitting without a jury, that the gross negligence or wilful and wanton misconduct on the part of the driver had not been established (CLS 1956, § 257.401).

Appeal from Wayne; Fitzgerald (Neal), J. Submitted April 11, 1958. (Docket No. 53, Calendar No. 47,200.) Decided July 15, 1958.

Case by Michael Karney, minor, by June Macy, his next friend, against Lloyd A. Upton and Auto-Truck Rental Company, a Michigan corporation, for personal injuries sustained while guest passenger in an automobile. Judgment for defendants. Plaintiff appeals. Affirmed.

*Charles R. King,* for plaintiff.

*Konrad D. Kohl (John R. Secrest,* of counsel), for defendant Auto-Truck Rental Company.

CARR, J. Plaintiff herein, by his next friend, brought this action in circuit court to recover damages for injuries sustained by him in a traffic accident. The declaration filed alleged that on the 27th

day of September, 1952, plaintiff was employed as a stable-boy at B Bar M Ranch in Macomb county, that at approximately 11 o'clock in the evening, or nighttime, of said day plaintiff, defendant Upton, and Orville Martin left the ranch for the purpose of going to a certain restaurant, that on the return trip defendant Upton insisted on driving the car which had been rented by him from the defendant Auto-Truck Rental Company, and that said Upton drove in a grossly negligent manner, at an excessive rate of speed, and in wanton disregard of the rights and safety of the plaintiff. It was further averred that Upton was under the influence of intoxicating liquor of which he had partaken during the day, and for that reason was incapable of operating the vehicle in a safe manner. After proceeding for approximately 1–1/2 miles from the restaurant the car struck the guard rail of a bridge, resulting in serious injuries to plaintiff and in the death of Martin. The pleading alleged that at the time of the accident plaintiff was a "gratuitous passenger" in the automobile.

The defendants filed separate answers to the declaration, each denying plaintiff's right to recover damages. Thereafter Upton's attorneys withdrew from the case and at the time of the trial he was not present in court, nor was he represented by counsel. At the conclusion of plaintiff's proofs as to the conduct of Upton in the operation of the automobile a request for judgment was made on behalf of the defendant Auto-Truck Rental Company. Following argument based on the proofs submitted on behalf of plaintiff, the trial judge, hearing the cause without a jury, concluded that gross negligence, or wilful and wanton misconduct, on the part of Upton had not been established. The court further expressed the opinion that plaintiff was guilty of contributory negligence in riding with Upton if the

latter was in such condition as to have been incapable of operating the vehicle in a proper manner. The judgment entered contained the following recital:

"The parties being in court and a trial by jury being waived by stipulation, the court heard the testimony and the arguments of counsel and thereupon finds that the defendants are not guilty as the plaintiffs have complained against them."

A motion for a new trial was subsequently made and denied, and plaintiff has appealed from the judgment.

At the outset of the trial counsel for defendant Auto-Truck Rental Company raised in its behalf the question whether gross negligence on the part of Upton, if such there was, imposed liability on it. The matter was again referred to after the closing of the proofs in connection with a discussion of the factual issues involved. The trial court did not pass on the legal issue thus presented. It may be noted that the recent decision of this Court in *Peyton* v. *Delnay,* 348 Mich 238, is squarely in point. See, also, *Wieczorek* v. *Merskin,* 308 Mich 145.

As appears from the judgment entered, the trial court based determination of the cause on the testimony as to how the accident occurred and the reasons therefor, insofar as disclosed by the testimony. At the time of the accident plaintiff was 13 years of age. His testimony indicates that he was in all respects a normal youth of such age. It is argued that he should have left the car when Upton insisted on driving. It may be noted in this connection that Martin also remained in the automobile. The record indicates that Martin was at the time past 21 years of age, and that Upton was approximately 25 years old. As we view the matter, however, it

is unnecessary to consider on this appeal whether plaintiff was guilty of negligence and, if so, whether such fact would bar relief in the instant case.

No witness other than plaintiff testified as to the occurrence of the accident, or the condition of Upton at the time. The question presented is whether, construing the testimony in plaintiff's favor, the finding of the trial judge that gross negligence, or wilful and wanton misconduct, had not been established was against a preponderance of the proof. It appears that both plaintiff and Martin objected to Upton's driving the car on the return trip from the restaurant on the ground that he was not in proper condition to drive. However, Upton was responsible for the vehicle, he having rented it from the other defendant, and he was entitled to its control. It does not appear that he had any difficulty in starting the car, and he proceeded for approximately 1-1/2 miles prior to the accident without becoming involved with any other vehicle. The following testimony of the plaintiff as to what occurred during that distance fairly indicates the claim made in his behalf:

"*Q.* During that time, what did you observe so far as Lloyd driving the car?

"*A.* Well, Lloyd was going fast. He was going from side to side on the road. He was sort of swerving back and forth on the road.

"*Q.* Was it dark at that time?

"*A.* It was dark out.

"*Q.* Did you make any further protest?

"*A.* Well, most all the way we was trying to talk him into letting Orville drive.

"*Q.* He wouldn't stop the car?

"*A.* One time I remember when he asked him, I think it was Orville said, 'Come on, let me drive because you are in no condition,' and Lloyd said to him, 'What do you want to do, get me killed?'

"*Q.* What is the last that you recall before the impact?

"*A.* Well, we were coming towards the bridge and I could see the headlights shining off the steel, and then I hollered, but he kept going straight for the bridge and hit it.    *    *    *

"*Q.* During this ride for approximately a mile and a half, were you racing any other cars?

"*A.* Not that I remember.

"*Q.* He just drove that way without any cars involved?

"*A.* Yes, sir.

"*Q.* How many times did you protest, if you recall?

"*A.* It was quite a few times, about 20 times or more.

"*Q.* In other words, the entire route of the trip?

"*A.* We were protesting about up to Chicago road and then we give up.  There was only about 500 feet to the bridge then.

"*Q.* Can you estimate his speed?

"*A.* I'd say he was going about 70 miles an hour."

With reference to Upton's alleged intoxication plaintiff testified that about 4 o'clock in the afternoon Upton was "pretty well drunk," and that he saw him drinking at some time before the parties left the ranch.  He claimed further that while in the restaurant Upton went to sleep, expressing no opinion, however, as to whether such conduct was the result of drinking or because Upton was tired. Witness stated that he asked him to play a record, which Upton did but not the one for which plaintiff asked.  It does not appear that there was any difficulty in awakening Upton when the parties were ready to start the return trip.

In indicating his conclusions from the bench, the trial court said, in part:

"The only testimony in this case indicates that the driver was driving at a speed of approximately 70

miles an hour, and that the car was weaving. There is no indication that it was weaving off the road, or to the wrong side of the road, or that the weaving was of a sufficient magnitude to indicate anything in particular. The driver did hit the bridge, but in the absence of his testimony, it is not clear as to just why.

"Therefore, I am going to enter a judgment of no cause for action.

"*Mr. King:* I might interject, Your Honor, there were protest expostulations made.

"*The Court:* That is right. Let the record show there were expostulations of protest from the other 2 occupants of the car. These protests were all, as the court recalls, to the effect that the driver should let the other man drive."

The statement of the trial judge is in accord with the testimony of the plaintiff as to what actually occurred. It does not appear that either Martin or plaintiff complained to Upton that he was driving too fast or that they found fault because the car was "weaving." They were insisting that Martin should be allowed to drive. The reasons for Upton's refusal to comply with their request do not appear, except as a matter of inference from his question, "Do you want to get me killed?" Whether he had reasonable doubts as to Martin's ability to drive is a matter of speculation only, but his refusal to turn the control of the car over to Martin may not be regarded as establishing a spirit of recklessness and wantonness on his part.

The statutory provision pertaining directly to a cause of action of this nature is found in CLS 1956, § 257.401 (Stat Ann 1952 Rev § 9.2101) and reads as follows:

"No person, transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action

for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

The interpretation given by this Court to the statutory provision quoted is indicated in *Horton* v. *Fleser,* 340 Mich 68, and in prior decisions there cited. In holding that the question of liability on the part of the defendant was for determination by the jury, it was said (pp 71, 72):

"The term 'gross negligence or wilful and wanton misconduct' has been defined in numerous cases, among which are *Goss* v. *Overton,* 266 Mich 62; and *Titus* v. *Lonergan,* 322 Mich 112. In both of these it was held that each case must be determined upon the basis of the facts involved. In the *Titus Case* the Court referred to *Willett* v. *Smith,* 260 Mich 101, where it was said that the elements necessary to constitute wilful and wanton misconduct may be summarized as follows (p 104):

" ' "(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another." '

"Excessive speed, unless accompanied by wilful and wanton misconduct, is insufficient to impose liability under the so-called guest act. *Bushie* v. *Johnson,* 296 Mich 8. For the statute involved, see CL 1948, § 256.29 (Stat Ann § 9.1446). The mere fact that the guest passenger gave the driver warnings which were not heeded does not, standing alone, con-

stitute wilful and wanton misconduct. *Greimel* v. *Fischer,* 305 Mich 45; *Rogers* v. *Merritt,* 307 Mich 459; and *Cramer* v. *Dye,* 328 Mich 370. However, this in addition to other circumstances is a proper object for consideration by the jury in arriving at its conclusion."

Specific discussion of other decisions in accord with *Horton* v. *Fleser, supra,* would serve no useful purpose. Whether the driver of a motor vehicle has proceeded recklessly in the face of a traffic hazard that is or should be apparent to him, with a wilful and wanton disregard of the safety of a passenger, is, generally speaking, a question of fact for determination by the trier of the facts. Obviously involved is the state of mind of such driver, which is necessarily a matter of inference from the facts in each case. See *Titus* v. *Lonergan,* 322 Mich 112, and prior decisions there cited.

Under the proofs in the instant case it may not be said that the finding of the trial judge that gross negligence or wilful and wanton misconduct had not been established was contrary to the preponderance of the evidence. In such a situation we do not reverse.

Affirmed, with costs to appellee.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.