TURNER v. COTHAM.

1. AUTOMOBILES—GROSS NEGLIGENCE—WILFUL AND WANTON MISCONDUCT.

Each case of gross negligence or wilful and wanton misconduct under the guest act must be determined upon the basis of the facts involved in the case (CLS 1956, § 257.401).

2. SAME—WILFUL AND WANTON MISCONDUCT.

Wilful and wanton misconduct under the guest act arises where there is knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another with ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand and the omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another (CLS 1956, § 257.401).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 5A Am Jur, Automobiles and Highway Traffic § 534.
What amounts to gross negligence, recklessness, or the like, within statute limiting liability of owner or operator of automobile for injury to guest. 96 ALR 1479.
[2, 7] 5A Am Jur, Automobiles and Highway Traffic § 532.
[3] 5A Am Jur, Automobiles and Highway Traffic § 537.
[5, 6, 8] 5A Am Jur, Automobiles and Highway Traffic § 1041.
[9] 39 Am Jur, New Trial § 140.
Duty of jury to follow instructions as to amount of party's liability if liable at all. 23 ALR 305.
[10] 39 Am Jur, New Trial § 24.
[11] 58 Am Jur, Witnesses §§ 477, 478.
[12] 14 Am Jur, Costs § 93.

3. SAME—WILFUL AND WANTON MISCONDUCT—EXCESSIVE SPEED—GUEST ACT.

Excessive speed, unless accompanied by wilful and wanton misconduct, is insufficient to impose liability under the so-called guest act (CLS 1956, § 257.401).

4. SAME—WILFUL AND WANTON MISCONDUCT—FAILURE TO HEED WARNING BY GUEST PASSENGER.

The mere fact that the guest passenger gave the driver warnings which were not heeded does not, standing alone, constitute wilful and wanton misconduct (CLS 1956, § 257.401).

5. SAME—WILFUL AND WANTON MISCONDUCT—EXCESSIVE SPEED—FAILURE TO HEED WARNING BY GUEST PASSENGER.

Excessive speed and driver's failure to heed the warnings of his guest passenger, each of which, standing alone, are insufficient to constitute wilful and wanton misconduct under the guest act are proper objects, in addition to other circumstances, for consideration by a jury in arriving at its determination (CLS 1956, § 257.401).

6. SAME—WILFUL AND WANTON MISCONDUCT—DRIVER'S STATE OF MIND.

The state of mind of the driver is obviously involved in every action in which a guest passenger alleges there has been gross negligence or wilful and wanton misconduct by the driver and such matter is necessarily a matter of inference from the facts in each case (CLS 1956, § 257.401).

7. SAME—WILFUL AND WANTON MISCONDUCT—ORDINARY NEGLIGENCE.

The acts necessary to constitute wilful and wanton misconduct under the guest act are of a different quality than those comprising mere negligence, although acts of ordinary negligence may be included (CLS 1956, § 257.401).

8. SAME—WILFUL AND WANTON MISCONDUCT.

Evidence presented in guest passenger's action against host motorist who lost control of his car while engaged in overtaking 2 cars going in the same direction *held*, to have presented a jury question as to whether defendant was guilty of wilful and wanton misconduct (CLS 1956, § 257.401).

9. DAMAGES—PERSONAL INJURY ACTION—QUESTION FOR JURY.

A defendant in an action for personal injuries is entitled to have the jury, once it has found him liable at all, give deliberate consideration to the amount of the damage that plaintiff sustained and where such consideration is not given by the jury the defendant is entitled to a new trial.

10. NEW TRIAL—WILFUL AND WANTON MISCONDUCT—DAMAGES.

A new trial, not restricted to issue of damages, is granted in guest passenger's action against host motorist, where trial court had granted defendant's motion for judgment *non obstante veredicto*, and a question for the jury was presented as to whether defendant was guilty of wilful and wanton misconduct, and jury had not given deliberate consideration to the matter of amount of the damage that the plaintiff sustained (CLS 1956, § 257.401).

11. ATTORNEY AND CLIENT—CONSULTATION—EVIDENCE.

Testimony of attorneys, with whom it is claimed plaintiff had consulted before engaging counsel who represented him at the trial, should be restricted to the fact as to whether a consultation was held.

12. COSTS—NEW TRIAL—FAILURE OF EITHER PARTY TO PREVAIL.

No costs are allowed upon reversal of judgment and remand for new trial in guest passenger's action against host motorist, where new trial not restricted to amount of plaintiff's damage is given, since neither party has prevailed (CLS 1956, § 257-.401).

Appeal from Berrien; Hadsell (Philip A.), J. Submitted April 7, 1960. (Docket No. 34, Calendar No. 48,282.) Decided September 16, 1960. Rehearing denied December 1, 1960.

Case by Irving Turner against Bennie Willie Cotham for personal injuries sustained while a guest passenger in automobile. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Defendant cross-appeals as to excessiveness of verdict. Reversed and remanded for new trial.

*George S. Keller* (*Robert S. Feldman* and *Henry W. Gleiss*, of counsel), for plaintiff.

*J. T. Hammond* and *John T. Hammond*, for defendant.

KELLY, J. A jury award of damages to plaintiff in his guest passenger action* against defendant was

---

* See CLS 1956, § 257.401 (Stat Ann 1952 Rev § 9.2101).—RE-PORTER.

nullified by judgment *non obstante veredicto*. Plaintiff appeals.

After dark, about 7:30 p.m., on December 1, 1956, plaintiff, defendant, and their friend, Ivan Orr, decided to drive from Euclid Center to Niles to shoot some pool and to try and collect a debt owed Orr.

The trip was made in defendant's newly-acquired Chevrolet, and as they drove south on US-31 defendant and Orr argued as to whether the Chevrolet possessed more speed than Orr's Buick.

Defendant admits that in demonstrating the speed of his Chevrolet he drove at the rate of 95 miles per hour over a 1-1/2 mile stretch of highway some 4 or 5 miles distant from the point of accident, but estimated his speed at the time of accident to be between 60 and 70 miles per hour.

Orr testified defendant was driving 98 miles per hour as he passed the first car just previous to the accident. Plaintiff testified defendant was traveling more than 90 miles per hour at the time of the accident.

Defendant's speed caused him to overtake 2 cars, approximately 300 feet apart, proceeding southerly, the same direction defendant was traveling. Defendant passed the first car and swung back into the southbound lane but as he pulled out sharply to pass the second car he lost control, crossed over to the opposite shoulder, knocked down a post and mailbox and came to rest against a tree.

The driver of the first car defendant passed testified that he observed defendant's car rapidly overtake and pass him at about 80 miles per hour; that he observed defendant lose control of his car as he attempted to pass the second vehicle.

Plaintiff testified: "I asked him (defendant) several times to slow down. I told him the car was too light; he'd go off the road." Defendant answered by saying that "it would go faster"; that Orr told

defendant, " 'Bennie, you'd better slow this thing down', and said something about being too light to stay in the road."

· Orr testified that he asked defendant to slow down at least 3 times, and "told him she wouldn't do no more; too light for the road." Defendant answered by saying that "she'd do more * * * the Buick wouldn't outrun his Chevy."

· Defendant denied that he was asked to slow down, but stated: "I was comparing my car with his (Orr's) car entirely. * * * He was comparing to his car. He said 'Your car is too light for this speed. My car is a heavier car.' "

Defendant was cross-examined as to the speed he drove the 4 or 5 miles previous to the accident and he referred to curves in the road, as disclosed by the following questions and answers:

"*Q.* That's how you arrive at the opinion that the car was only going 60 to 70? The circumstance that you didn't have your gas pedal all the way to the floor? Is that true?

"*A.* Not entirely.

"*Q.* What other circumstance assisted you in arriving at such estimate of your speed in that span?

"*A.* The outlay of the road. In other words, the road itself. I know the road curves wouldn't permit speeds higher than those speeds.

"*Q.* In other words, your knowledge of the circumstances showed you should not have been going at speeds in excess of 60 to 70 miles an hour because of the curves in that span of highway? This is a circumstance that permitted you to come to the estimate of 60 to 70 miles an hour in that 4 or 5 mile span? Is that true?

"*A.* Yes, partially."

In passing on defendant's motion for judgment *non obstante veredicto,* the court in its opinion stated:

"There was no ill will or anger or evidence of liquor having been consumed by the defendant or his passengers. Defendant had expressed a desire to prove that his car would go faster than a Buick owned by the other passenger. * *. *

"There was no wilful and wanton disregard of known or apparent dangers. The negligence of the defendant was of short duration and consisted entirely of an excessive rate of speed. * * *

"There was nothing in the speed of the defendant in the instant case which was so grossly excessive as to shock the conscience with its overwhelming probability of harm. * * *

"In the instant case the defendant was guilty of ordinary negligence beyond question, but there was no showing of gross negligence or wilful and wanton misconduct."

Defendant and appellee filed a cross-appeal to be considered by this Court in event a decision is reached that plaintiff's proof presented a jury question as to defendant's gross negligence and wilful and wanton misconduct.

In the cross-appeal it is claimed:

(1) That the $17,700 verdict was grossly excessive because the jury disregarded the instructions of the court with respect to damages;

(2) That "the ends of justice require that a jury be permitted to consider newly-discovered evidence of a conspiracy to perpetrate a fraud upon the court by use of perjury."

In considering the question as to whether the jury did not understand or did not give any attention to the charge of the court regarding damages, the court in its opinion stated:

"Defendant also filed motion in the alternative for a new trial on several grounds. While these grounds do not specifically cover the court's basis for granting

a new trial, the action of the jury in fixing the verdict was such that it can not be allowed to stand.

"During the trial plaintiff's counsel selected a figure of $17,700 as the amount of damage which the plaintiff would consider satisfactory. This figure was written on the blackboard in the courtroom and was before the jury during the argument of counsel and the instruction of the jury. When the jury first returned with its verdict, the foreman stated, 'The jury finds the case in favor of the plaintiff in the full amount allowed as specified in the chart or in our instructions.' After being informed that they were not instructed as to the amount of the verdict and that it was for them to determine the amount from the evidence, the foreman announced, 'The amount was $17,900.' Plaintiff's counsel then volunteered, '$17,700.' The foreman then repeated the latter figure, but the court then returned the jury to the jury room to establish the amount of damages. Another member of the jury asked, 'What was that total amount? Do you remember it?' The court stated, 'If I did, I wouldn't dare tell you. You are supposed to do that.' The jury then returned to the deliberation room and was gone from the courtroom only 4 minutes when the verdict was recorded in the amount of $17,700.

"This action by the jury shows conclusively that the jury either did not understand or did not give any attention to the charge of the court regarding the damages to be awarded. The defendant was entitled to have the jury give deliberate consideration to the amount of the damage that the plaintiff sustained. This certainly was not done. No judgment should be entered on the jury's verdict under any circumstance."

Defendant testified that in March, 1957, plaintiff came to his home and asked him to cook up a story that he (plaintiff) was a pedestrian in order to get the insurance company to pay his bills and that he told plaintiff he would refuse to do so. Defendant's

mother testified that she was at home when plaintiff called upon her son but that she did not hear the conversation as she was in the kitchen; that 10 days or 2 weeks after this visit plaintiff called her on the telephone and said: " 'Mrs. Muff, I have taken this policy to different lawyers and they tell me I haven't got a case.' He says, 'Ben and I will have to cook up a story that I was hit hitchhiking;' the way he stated it to me, 'that I was hit along the road, in order for me to have a case.' "

Delores Cotham (wife of defendant but at time of accident his fiancee) testified that she was present when plaintiff called at defendant's home and she heard plaintiff inform her husband "that he wanted to cook up a story so he'd get some money from the insurance company, and Ben said 'No', he wouldn't do it; that it 'wouldn't be right.' "

Plaintiff testified on cross-examination that he had made a social call to defendant's home in March, 1957; that this call was made before he retained attorney Keller, who represented him in the present action; that it was his first visit to the home and that he had hardly known defendant before the accident; that he doesn't know what the conversation during his visit was about, but "never talked much about the accident"; that he did not ask defendant to testify that he was a pedestrian walking down the highway when he was run down; and that Mr. Keller was the only attorney he talked to about the accident.

On redirect examination the following questions were asked and answers given by plaintiff:

"*Q.* Is it true that you first approached me (Keller) in October of 1957?

"*A.* Sometime along there, yes.

"*Q.* Had you, before you had ever approached me or retained me as your attorney, ever secured the services or consulted with any other lawyer?

"*A.* No, I didn't.

"*Q.* And since October, 1957—I think I am entitled to this answer—have you ever consulted with or sought the services of any other lawyer?

"*A.* No, I haven't."

Witness Orr also testified that he had never discussed his testimony with any other attorney other than Mr. Keller.

At the time of argument on motion for new trial, counsel applied for and obtained leave to take the testimony of attorneys Carroll Williams and Dean Jennings.

The questions of privilege and professional ethics were raised by the witnesses with the court in chambers, and the court directed the witnesses to testify. The questions asked witnesses were limited to the fact of consultation and details disclosed by Orr and plaintiff in the presence of third persons.

Attorney Jennings testified that plaintiff consulted him in his office about the case and that he decided, and so instructed plaintiff, that he would not represent him because he did not believe the facts established gross negligence.

Attorney Williams testified that plaintiff first consulted him on August 28, 1957, and that he requested plaintiff to return with witness Orr; that plaintiff and Orr returned 4 or 5 days later, and that after the interview "I don't know whether he asked me or whether I told him I couldn't represent him."

In the reply brief, appellant does not claim the court erred in allowing the attorneys to testify, but states:

"It was not until after the verdict of $17,700 was rendered that the defendant made a concerted effort to discover who the other attorneys were who might be involved in this matter, although he knew before the time of trial of this possibility because of the statements of his defendant and defendant's mother and wife.

"If the additional testimony presented to the court by the defendant is analyzed, it would seem that it does nothing more than buttress to some extent the testimony of the defendant's wife and mother. * * *

"The only real relevance this additional testimony could have would be to impeach the credibility of the plaintiff and witness Orr. The defendant presented the testimony of the defendant's mother and his wife. This testimony served to contradict and impeach that of the plaintiff. The defendant now seeks a new trial in order to present more impeaching testimony."

In *Horton* v. *Fleser,* 340 Mich 68, 71, 72, this Court said:

"The term 'gross negligence or wilful and wanton misconduct' has been defined in numerous cases, among which are *Goss* v. *Overton,* 266 Mich 62; and *Titus* v. *Lonergan,* 322 Mich 112. In both of these it was held that each case must be determined upon the basis of the facts involved. In the *Titus Case* the Court referred to *Willett* v. *Smith,* 260 Mich 101, where it was said that the elements necessary to constitute wilful and wanton misconduct may be summarized as follows (p 104):

" ' "(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another." '

"Excessive speed, unless accompanied by wilful and wanton misconduct, is insufficient to impose liability under the so-called guest act. *Bushie* v. *Johnson,* 296 Mich 8. For the statute involved, see CL 1948, § 256.29 (Stat Ann § 9.1446).* The mere fact that the guest passenger gave the driver warnings which were not heeded does not, standing alone, constitute wilful and wanton misconduct. *Greimel* v.

---

* See current citation, *ante,* 200.—REPORTER.

*Fischer,* 305 Mich 45; *Rogers* v. *Merritt,* 307 Mich 459; and *Cramer* v. *Dye,* 328 Mich 370.    However, this in addition to other circumstances is a proper object for consideration by the jury in arriving at its conclusion."

*Karney* v. *Upton,* 353 Mich 262, after quoting with approval *Horton* v. *Fleser, supra,* stated (p 270):

"Specific discussion of other decisions in accord with *Horton* v. *Fleser, supra,* would serve no useful purpose.    Whether the driver of a motor vehicle has proceeded recklessly in the face of a traffic hazard that is or should be apparent to him, with a wilful and wanton disregard of the safety of a passenger, is, generally speaking, a question of fact for determination by the trier of the facts.    Obviously involved is the state of mind of such driver, which is necessarily a matter of inference from the facts in each case. See *Titus* v. *Lonergan,* 322 Mich 112, and prior decisions there cited."

In *Stevens* v. *Stevens,* 355 Mich 363, we held that to have liability under the guest passenger act for gross negligence or wilful and wanton misconduct of the motorist there must be a knowledge on the part of the latter of the existence of a very dangerous situation, an ability to avoid it, and a reckless and complete disregard of the rights of passengers and a disregard of warnings, acts of a different quality than those comprising mere negligence, although acts of ordinary negligence may be included.

We conclude that the sharp conflict between plaintiff's and defendant's testimony presented a jury question as to whether defendant was guilty of wilful and wanton misconduct.

We agree with the trial court's statement that:

"This action by the jury shows conclusively that the jury either did not understand or did not give any attention to the charge of the court regarding the damages to be awarded.    The defendant was entitled

to have the jury give deliberate consideration to the amount of the damage that the plaintiff sustained. This certainly was not done."

A new trial is granted. The record is such that a redetermination should not be restricted to damages but should also include the question as to whether defendant was guilty of wilful and wanton misconduct.

Also, the testimony of attorneys, which was offered on the motion for new trial, should be restricted to the fact as to whether a consultation was held.

Reversed and remanded for new trial. No costs, neither party prevailing.

DETHMERS, C. J., and CARR, SMITH, and EDWARDS, JJ., concurred with KELLY, J.

BLACK, J. (*concurring*). I agree with Mr. Justice KELLY that the question of defendant's guilt of actionable gross negligence was for the jury, and that the judgment for defendant notwithstanding the verdict of the jury should on that account be reversed.

I do not agree that consideration of defendant's alternative motion for new trial—and hence his "conditional" cross-appeal—is now in order. The trial judge, having determined to enter judgment for defendant, has not as yet acted upon that motion. Until he does the issues presented thereby and brought here by cross-appeal are not ready for review. Defendant's said motion and cross-appeal are pointedly addressed, not to alleged errors occurring at or during the trial,* but to alleged excessiveness of verdict and newly-discovered evidence (see opinion of Mr. Justice KELLY for details).

---

* See *Peters* v. *Aetna Life Ins. Co.*, 282 Mich 426; *St. John* v. *Nichols*, 331 Mich 148, 158, 159; *George* v. *Wayne Circuit Judge*, 336 Mich 543, 545–547; also old and new [347 Mich xxi] section 8 of Court Rule No 66 (1945) and author's comment thereunder, Honigman, pp 632, 637, and 1960 supplement, pp 181, 186.

Since the question is due to arise when defendant's motion for new trial comes to determination below, I record emphatic agreement with my Brother that the testimony of attorneys Jennings and Williams, if admissible at all, should be confined to the fact of consultation distinguished from communications made in the course of consultation. No attorney, previously consulted by a party to a subsequently instituted action, should in the circumstances disclosed here be forced to testify otherwise.

I concur, then, in reversal of the judgment for defendant. This means that plaintiff is entitled to judgment on the verdict, and that both parties are entitled from that point to pursue such proceedings as each may be advised, including right of defendant to press in the court below his pending and yet undecided motion for new trial.

KAVANAGH and SOURIS, JJ., concurred with BLACK, J.